UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Alonzo Johnson,

                                          **DECISION AND ORDER**
            Petitioner,                   **No. 04-CV-6101T**

     -vs-

John Burge,
Superintendent,
Auburn Correctional Facility,

            Respondent.
_____

## I.   Introduction

*Pro se* petitioner Alonzo Johnson ("Petitioner") has filed a
timely petition for a writ of habeas corpus under 28 U.S.C. § 2254
challenging the constitutionality of his custody pursuant to a
judgment entered May 23, 2000, in New York State, Supreme Court,
Erie County, convicting him, after a jury trial, of one count of
Murder in the First Degree (Penal Law §§ 20.00, 125.25[1]), one
count of Criminal Possession of a Weapon in the Third Degree (Penal
Law § 265.02[1]), and one count of Criminal Possession of a Weapon
in the Fourth Degree (Penal Law § 265.01[4]).

     For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

     The charges arise out of a shooting incident that occurred on
February 26, 1999 in the City of Buffalo.  On that date, Petitioner
drove a blue Honda Accord with black trim ("the vehicle") on Ada
Place in Buffalo, New York with his wife, Donna Page Johnson

("Donna" or "the co-defendant"), in the passenger seat. Trial
Transcript (T.T.) 87-90, 153-54, 221, 316. Andre Frazier
("Frazier" or "the victim") and Anthony Stallworth ("Stallworth")
were walking on Ada Place. T.T. 221. The two had known each other
since they were young children. T.T. 215. Petitioner stopped the
vehicle to speak with Frazier and Stallworth. T.T. 221.
Petitioner asked Frazier for the thirty dollars that he loaned
Frazier to purchase a battery, which Frazier never purchased. T.T.
221-22, 236, 422-423. Frazier indicated he did not have
Petitioner's money. T.T. 236. Petitioner then told Donna to lean
her seat back, which she did. T.T. 236-37, 326-27. Petitioner
grabbed a shotgun, pointed it at Frazier, and fired a single shot
through the open window of the vehicle, hitting Frazier. T.T. 77,
90, 157, 236-40, 245. Frazier and Stallworth had already started
to run before the shot was fired. T.T. 243-44, 247, 291, 295-96,
331. The trajectory of the bullet through Frazier's body tended to
establish that Frazier was running away when he was shot. T.T.
790-92. After the shooting, the vehicle sped away. T.T. 91-93,
157, 247. Frazier died from the gunshot wound. T.T. 788.

The police apprehended Petitioner approximately one hour after
the shooting. T.T. 358, 382. At police headquarters, after
receiving his <u>Miranda</u> warnings and signing a <u>Miranda</u> warnings card,
Petitioner told a detective he had been untruthful about where the
gun involved in the shooting could be found. T.T. 415-16, 418-20.

Petitioner indicated that the gun was in the bushes off the Best Street ramp in Buffalo leading east onto Route 33.  T.T. 363, 368. The police searched this area, however, but did not find a gun. T.T. 364, 369.  While in custody, Petitioner also made the following statements to police:  that he could not have been at the scene of the crime at the time of the shooting because he was at "ABC Hardware" on Bailey Avenue selling a snowblower; that he had shot the gun in the air two or three times to scare Frazier and Stallworth because they were shooting at him; that the gun was loaded with number eight buckshot that could not kill anybody; that if Frazier was shot with number eight buckshot, then Petitioner was the person who shot him; that there must have been a shoot-out after Petitioner left; that Petitioner did not shoot Frazier, but that someone on Orange Street shot Frazier; that he had a shotgun in the car because he had gone target shooting that morning.  T.T. 364-65, 366-70, 392, 420, 426-27, 432, 481.

On July 8, 1999, pre-trial Huntley[1] and Wade[2] hearings were held and the defense motions to suppress statements[3] made by

[1]     People v. Huntley, 15 N.Y.2d 72 (N.Y. 1965) (trial court must conduct pre-trial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

[2]     United States v. Wade, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

[3]     There are two sets of statements at issue in this case.  The first set of statements were made by Petitioner, while in custody but prior to receiving his Miranda warnings, wherein he initiated a conversation with a police detective about an unrelated incident, stating that he thought "[this] was a big deal over a snowblower."  Hearing Minutes (H.M.) 7.  The second set

Petitioner to police were denied. Decision and Order of the Erie County Supreme Court (Dec. and Ord.) 11/18/99.

A jury trial was held from March 27, 2000 to April 10, 2000 resulting in Petitioner being found guilty of all counts of the indictment.

During the trial, the prosecution presented testimony from three witnesses who lived on or near Ada Place or were in the area when the shooting occurred. T.T. 72-76, 85-94, 152-165. Buffalo Police Department Detectives Phillip Tisdale ("Tisdale") and Robert Chella ("Chella") also testified about the statements made to them at police headquarters by Petitioner after he was arrested. T.T. 349-50, 357-58, 413-429. The prosecution offered evidence of gun powder found on items of clothing collected from Petitioner and Donna after their arrest and from inside the vehicle. The forensic arms expert, Alford Schwoeble ("Schwoeble"), testified, based on his examination of particles recovered from the interior of the vehicle and from Petitioner's and Donna's clothing, that a weapon had been fired within the car. T.T. 596-99.

The defense offered the testimony of three witnesses at trial, two of which provided alibi testimony. T.T. 813-857.

On May 23, 2000, Petitioner was sentenced as a second felony offender, and was sentenced to the following concurrent terms of

---

of statements were also made while Petitioner was in custody, but after Petitioner was given his <u>Miranda</u> warnings and alerted that the warnings were in regard to the crimes at issue, wherein he made various statements, some incriminating (listed above).

imprisonment: twenty-five years to life for murder, three and one half to seven years in prison for criminal possession of a weapon in the third degree, and one year for criminal possession of a weapon in the fourth degree.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on March 21, 2003. <u>People v. Johnson</u>, 303 A.D.2d 967 (4th Dept 2003). Leave to appeal to the New York State Court of Appeals was denied on July 2, 2003. <u>People v. Johnson</u>, 100 N.Y.2d 583 (N.Y. 2003). This habeas petition followed[4].

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

_____

[4]    Petitioner filed an original habeas petition on March 11, 2004 requesting habeas relief on eight grounds. These were the same grounds he raised on direct appeal to the Appellate Division, Fourth Department. On December 29, 2005, Petitioner filed a Traverse, which clarified two claims (grounds one and eight) raised in the original habeas corpus petition, and requested that his petition be "amended" to exclude these claims if the Court determined them to be procedurally barred. On January 9, 2006, Petitioner filed an Amended Petition, listing the eight claims from his original habeas petition, and requesting grounds one and eight "be deleted from petition if this Court deems [them] procedurally defaulted." Amended Petition (Am. Pet} ¶22A, Ground Eight.

5

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion

requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" <u>Dunham</u>, 313 F.3d at 729 (quoting <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" <u>id.</u> (quoting <u>Lambrix</u>,

8

520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Petitioner's Claims

### 1. Ground One

Petitioner argues that the evidence was legally insufficient to sustain his conviction because the prosecution failed to disprove his alibi defense beyond a reasonable doubt. Amended Petition (Am. Pet.) ¶22A.[5] Petitioner raised this claim on direct appeal to the Appellate Division, Fourth Department. The Appellate Division found that Petitioner had waived review of this determination by failing to renew his motion to dismiss at the close of his case, and that, in any event, the issue was unpreserved based on Petitioner's general motion to dismiss at the close of the People's case. Memorandum and Order (Mem. and Ord.) 03/21/03. Respondent argues that the Appellate Division's reliance upon a state procedural rule to dismiss the claim constitutes an "adequate and independent" state ground precluding federal habeas review of the claim. Respondent's Memorandum of Law (R.M.), 2.

---

[5] Petitioner requests that this claim be "deleted" from the petition if it is procedurally barred from habeas review. Pet. ¶22A. However, in order for the Court to make such a determination, it must perform an analysis of the claim.

See <u>Coleman</u>, 501 U.S. at 729-30; <u>Harris v. Reed</u>, 489 U.S. 255, 260-61 (1989).  This Court agrees.

The New York Court of Appeals clearly has held that the contemporaneous objection rule, New York Criminal Procedure Law ("C.P.L.") § 470.05(2), requires that a motion to dismiss alert the trial court to the specific deficiency alleged in order to preserve an insufficiency of the evidence claim for appeal;  a general motion to dismiss does not suffice. <u>People v. Gray</u>, 86 N.Y.2d 10, 19-21 (N.Y. 1995).  One may not present a legal insufficiency argument through a C.P.L. § 330.30 motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing the motion to dismiss at the close of all the evidence. <u>People v. Hines</u>, 97 N.Y.2d 56, 61-62, (N.Y. 2001).  In this case, Petitioner failed to renew his motion to dismiss at the close of his case, thereby waiving review of the issue.  Thus, the procedural rule relied on by the Appellate Division constituted an "independent" state law ground for its decision dismissing petitioner's insufficiency claim.

A procedural bar is "adequate" if it is based on a rule that is "firmly established and regularly followed" by the state in question.  <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999).  Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of the specific circumstances presented in the case, an inquiry that

includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances. Id. (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In determining adequacy of a state procedural bar, the Second Circuit has looked at (1) whether the alleged procedural violation was actually relied on in the state court, and whether perfect compliance with the state rule would have changed the state court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemna, 534 U.S. 362, 386-87 (2002)).

With respect to the first consideration, Petitioner's failure to specifically argue that the evidence was legally insufficient to convict him was "actually relied on" by the trial court in that the trial court never was given occasion to consider the alleged insufficiency. See Gray, 86 N.Y.2d at 20-21; see also Cotto, 331 F.3d at 243 (finding that while likely impact of timely objection involves certain degree of speculation, it is possible that trial court may have come to different conclusion had reasons for the objection been given).

As for the second consideration, it is well-settled under New York law that the failure to alert a trial court to the specific basis for a motion to dismiss precludes later use of that motion as a vehicle for creating a question of law on appeal. See, e.g., Gray, 86 N.Y.2d at 19 (citing cases). Thus, state case law indicates that "compliance with the rule was demanded in the specific circumstances presented." Cotto, 331 F.3d at 240.

The final consideration likewise fails to help Petitioner for there is no argument that he "substantially complied" with C.P.L. § 470.05 through his generalized motion to dismiss, which was made at the close of the People's case. The trial court was not alerted that there was a failure in the prosecution's proof.

Consideration of the relevant factors weighs in favor of finding that the procedural bar rule, as applied by the state courts in Petitioner's case, was "adequate" to preclude federal habeas review. See Evans v. Sewkowski, No. 03-CV-416S, 2006 U.S. Dist. LEXIS 69026, at *15-16 (W.D.N.Y. Sept. 26, 2006) (Skretny, D.J.) (finding the invocation of the state procedural bar rule to be adequate even where petitioner's trial counsel made a general motion to dismiss at the end of the prosecution's case, and, after the defense rested, "simply sought to renew the motions [he] made earlier"; trial counsel failed to argue any specific rationale in support of either application).

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner has failed to show cause and prejudice or that this Court's failure to review the claim will result in a miscarriage of justice. Therefore, the claim must be dismissed, and is effectively withdrawn from the habeas corpus petition, per Petitioner's request.

**2. Ground Two**

Petitioner contends that the trial court's failure to suppress the statements he made to police after his arrest violated his constitutional right to a fair trial and of due process. Am. Pet. ¶22B. Specifically, he argues that his statements prior to the administration of Miranda warnings were tainted and that statements made after the warnings were also tainted because no pronounced break occurred between the statements given before the warnings and the statements given afterwards[6]. Petitioner raised this claim in his appeal to the Appellate Division, Fourth Department. The

---

[6] Per Petitioner's instructions, these supporting facts are taken from Petitioner's brief on appeal. Am. Pet., Page 7.

Appellate Division found that the trial court properly denied

Petitioner's suppression motion, ruling that

> [t]he record of the suppression hearing
> establishes that the police advised defendant
> that he was being detained for a matter
> unrelated to initial statements that he made to
> police. Thus, it cannot be said that his
> statements concerning the crimes at issue
> herein made to the police after he waived his
> <u>Miranda</u> rights were tainted by questioning
> concerning the unrelated matter that preceded
> his waiver of those rights (internal citations
> omitted).

Mem. and Ord. 03/21/03.

On July 8, 1999, after conducting a <u>Huntley</u> hearing, the trial

court made the following findings of fact:

> On February 26, 1999 at approximately 4:40
> p.m., the defendant, Alonzo Johnson, and co-
> defendant, Donna Page-Johnson, in police
> custody, were brought to Buffalo Police
> Headquarters. The Defendant was brought into
> the Homicide Squad Interview Room and detained
> there. Upon arriving at that office, he
> commented to Detective Sergeant Chella that he
> "thought this was a big deal over a
> snowblower."
>
> Detective Sergeant Chella spoke with officers
> outside the interview room and then entered
> the room and asked the Defendant why he
> thought he was there. After the Defendant
> related a story about a snowblower, the
> Detective advised him of his <u>Miranda</u> rights.
> He read the rights to the Defendant from a
> card. The Defendant and the Detective signed
> the front of the card and then the Defendant
> signed the back of the card, noted the time
> and date on it and then the Detective also
> signed the back of the card.
>
> The Detective spoke with the Defendant for
> about one and one-half hours regarding the

shooting. No threats or promises were made to the Defendant. He was provided with cigarettes and refreshments. After about forty-five minutes, Detective Tisdale entered the room. The Defendant asked if he could speak to Detective Tisdale alone and that request was granted. Detective Tisdale did not make any threats or promises to the Defendant. After several minutes Detective Sergeant Chella re-entered the interview room and the Defendant indicated that he would show them where to find the shotgun. The Defendant then asked for his attorney to be contacted and all questioning ceased.

At around 7:00 p.m., the Defendant was given an opportunity to see his wife, co-defendant Donna Page-Johnson, before he accompanied the Detectives in a fruitless effort to locate the shotgun. When they returned he asked if he could again speak with Detective Sergeant Chella but this request was denied as he had previously invoked his right to counsel.

Dec. and Ord. 11/18/99.

These findings of fact are presumed to be correct unless a Petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). No such demonstration has been made in the present petition.

The facts support the trial court's determination, as affirmed by the Appellate Division, that Petitioner's statements were admissible at trial. Here, Petitioner initiated a conversation with Chella about a snowblower that was unrelated to the crimes at issue, and which was not inculpatory in nature. H.M. 7-8. After doing so, Chella told Petitioner he would read Petitioner his rights regarding a matter unrelated to the preceding conversation.

H.M. 9. Petitioner was then given his <u>Miranda</u> warnings, and proceeded to make various statements (some inculpatory) about the crimes at issue. T.T. 364-65, 366-70, 392, 420, 426-27, 432, 481. Under these circumstances, no "taint" attached to the incriminating statements made post-<u>Miranda</u> warning. <u>See</u> <u>Nova v. Bartlett</u>, 211 F.3d 70 (2d Cir. 2000) (finding taint did not attach to suspect's post-<u>Miranda</u> statements where suspect made uncoerced, non-inculpatory statements prior to receiving <u>Miranda</u> warnings) (citing <u>Oregon v. Elstad</u>, 470 U.S. 298, 311-14 (1985) ("[w]e hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite <u>Miranda</u> warnings.")).

Affording the state trial and appellate court's factual findings the presumption of correctness required by the habeas statute, this Court finds sufficient support for the admission of Petitioner's statements as substantive evidence at trial. It is clear from the testimony at the <u>Huntley</u> hearing and at trial that Petitioner's statements regarding the crimes at issue were not "tainted" by the initial statements he made to police regarding the unrelated snowblower matter. Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

**2. Grounds Three, Four, Six, and Seven**

Petitioner asserts that various evidentiary rulings made in his criminal trial were erroneous, thereby depriving him of federal due process. Am. Pet. ¶22C, D, Ground Six, Ground 7. Specifically, Petitioner challenges the trial court's admission of (1) a statement of the decedent admitted under the present sense impression exception to the hearsay rule; (2) testimonial evidence of Petitioner's uncharged crimes; and (3) testimonial evidence from a rebuttal witness on alleged collateral matters. Petitioner also alleges, in this same vein, that the trial court erred when it denied his motion for an expert witness who would have testified on the subject of eyewitness identifications. Memorandum and Order of the Erie County Supreme Court 06/15/99. Petitioner raised these claims to the Appellate Division, Fourth Department. The Appellate Division individually rejected each of Petitioner's claims, finding that the trial court's evidentiary rulings were not erroneous.

In general, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable in a habeas corpus petition. Crane v. Kentucky, 476 U.S. 683, 689 (1986). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fair trial. United States v. Agurs, 427 U.S. 97, 108 (1976). Because the Appellate Division determined that there were

17

no errors of state evidentiary law, there are no errors that would rise to constitutional infirmities. The fact that there were no errors of federal constitutional magnitude precludes habeas review of these claims. See Estelle v. McGuire, 502 U.S. at 68 (1991).

Thus, grounds three, four, six, and seven of the petition must be denied because they are not cognizable on habeas review.

### 3. Ground Five

Petitioner contends that he was deprived of his due process right to a fair trial by certain statements made by the prosecution on summation. Am. Pet. ¶22, Ground Five. More specifically, Petitioner argues that the prosecutor vouched for the People's witnesses, expressed her personal beliefs about the strength of the proof, and denigrated the defense[7]. Petitioner raised this claim to the Appellate Division, Fourth Department. The Appellate Division rejected Petitioner's contention that he was deprived of a fair trial by prosecutorial misconduct on summation, and found that "[a]ny 'improprieties were not so pervasive or egregious as to deprive the defendant of a fair trial (internal citations omitted).'"

It is well settled that, in order to obtain habeas relief based upon the misconduct of a prosecutor, "it is not enough that the prosecutor's remarks were undesirable or even universally

---

[7]     Per Petitioner's instructions, these supporting facts are taken from Petitioner's brief on appeal. Am. Pet., Page 7.

condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). A constitutional violation will be found only when the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused substantial prejudice to the defendant." <u>Id.</u> (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir. 1981), <u>cert. denied</u>, 456 U.S. 989 (1982)).

The first instance of alleged prosecutorial misconduct occurred on summation when the prosecutor vouched for the truthfulness of one of the People's witnesses (Stallworth). As Petitioner points out, it is improper for a prosecutor to vouch for the credibility of his own witness, both as a matter of New York State and Federal law. <u>See</u> <u>United States v. Eltayib</u>, 88 F.3d 157, 173 (2d Cir. 1996) ("[A] prosecutor 'may not properly vouch for the credibility of a witness.'") (quoting <u>United States v. Thai</u>, 29 F.3d 785, 807 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 977 (1994).

However, in this instance, an objection was made at the time of the vouching, and sustained by the trial court. T.T. 963-64. And, before ultimately making its decision, the jury was instructed to disregard any matter that was ordered stricken. T.T. 1024. By sustaining the objection and ordering it stricken from the record, the trial court took curative measures to mitigate any prejudice that may have been caused by the prosecution's improper vouching.

The second instance of alleged prosecutorial misconduct occurred on summation when the prosecutor offered her personal opinion about the proof in the case. Specifically, she suggested that more evidence would have been gathered if a different method had been used to collect gun powder[8]. "It is well settled that it is improper for a prosecutor to interject personal beliefs into a summation." United States v. Nersesian, 824 F.2d 1294, 1328 (2d Cir. 1987) (citing United States v. Young, 470 U.S. 1, 8-9 (1985). Nonetheless, the challenged remarks must be evaluated in the context of the trial as a whole, for the government is allowed to respond to an argument that impugns its integrity or the integrity of the case. See United States v. Bagaric, 706 F.2d 42, 60-61 (2d Cir. 1983), cert. denied, 464 U.S. 840 (1983). Thus, when the defense has "attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to

---

[8]     The prosecutor stated: "If you use that sticky stuff he [the forensic arms expert] would have gotten even more proof." T.T. 979-80.

reply with 'rebutting language suitable to the occasion.'" <u>United</u> <u>States v. Praetorius</u>, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (quoting <u>United States v. LaSorsa</u>, 480 F.2d 522, 526 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S. 855 (1873)), <u>cert. denied</u>, 449 U.S. 860 (1980). In this case, the prosecutor's statement -- that more evidence would have been obtained had a different method of collection been used -- was made in response to the defense's argument that gunshot residue had not been collected in the best possible fashion. T.T. 930-31, 933. This argument was based on the testimony of prosecution witness Schwoeble, who testified that the most efficient way to collect particles is with an adhesive sampler, rather than gauze wipes. T.T. 583, 589-90. Therefore, in light of the defense summation, the prosecutor's rebuttal was not impermissible.

Third, Petitioner contends that the prosecutor improperly denigrated the defense[9] and the defense's alibi witnesses[10], citing three specific instances on summation wherein the prosecutor argued that aspects of the defense's case put forward on summation did not make sense. T.T. 976, 1001, 1010. Proffering such an argument

---

[9]    In the first instance, the prosecutor stated: "Ladies and gentlemen, some of the things that they [the defense] submit to you are police errors are nonsensical." T.T. 976. In the second instance, the prosecutor stated: "That alibi, no paperwork to support it. No video tape to support it. No congruence with two of them, just doesn't hold water." T.T. 1010.

[10]    The prosecutor stated, "And ladies and gentlemen, what those guys [the defense's alibi witnesses] say isn't consistent with each other, and it's simply, it isn't reasonable, and I submit to you it's completely unworthy of belief." T.T. 1001.

during summation, however, is permissible.  See Garcia v. Greiner, No. 01-CV-2470, 2004 U.S. Dist. LEXIS 7343, at *24 (E.D.N.Y. Apr. 28, 2004) ("[t]he prosecutor can properly ask the jury not to be side-tracked by certain evidence and certain issues to focus on the issues that make out the prosecution's case.").  Here, the prosecutor merely exhorted the jury not to focus on certain aspects of the defense's case that were inconsistent with or contrary to the prosecution's case.

Accordingly, the prosecution's summation, as a whole, was not inflammatory or intemperate.  The proof against Petitioner was compelling enough that the above isolated remarks in an otherwise fair proceeding did not deny Petitioner of a fair trial.  The Appellate Division's denial of Petitioner's prosecutorial misconduct claim was neither "contrary to" nor an "unreasonable application" of clearly established federal law.  This claim, therefore, must be denied.

### 4.  Ground Eight[11]

Petitioner argues that the sentence imposed on him by the trial court was harsh and excessive.  Am. Pet. ¶22A, Page 8.

In so much as Petitioner alleges constitutional defects in the term of sentence imposed, his claim does not present an issue cognizable on habeas review.  White v. Keane, 969 F.2d 1381, 1383

---

[11]    Petitioner requests that this claim be deleted from his habeas petition if "this Court deems it to be procedurall[y] barred."  Am. Pet. ¶22, Ground Eight.  This claim, however, is not cognizable on habeas corpus review.

(2d Cir. 1992) (challenge to term of sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range).

Here, Petitioner was sentenced to twenty-five years to life for murder in the second degree. He was sentenced as a second felony offender to three and one-half to seven years for criminal possession of a weapon in the third degree, and to a definite sentence of one year for criminal possession of a weapon in the fourth degree. See Penal Law §§ 70.06, 70.15. The sentences imposed were to be served concurrently. Petitioner received the maximum sentence for murder in the second degree. See Penal Law § 70.00. Thus, Petitioner's sentence falls within the statutory maximum set by New York law. As such, this claim does not present a federal constitutional question cognizable on habeas review and must be denied.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     September 22, 2009
           Rochester, New York